UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **CURTIS MOORE, et al.**, | : | Case No. 1:14-cv-852 |
| Plaintiff, | : | Judge Michael R. Barrett |
| v. | : | |
| **CALIBER HOME LOANS, INC., et al.**, | : | |
| Defendant. | : | |

<u>OPINION AND ORDER</u>

This matter is before the Court on Defendants Bank of New York Mellon, as Trustee for CIT Home Equity Loan Trust 2002-1, and Caliber Home Loans, Inc.'s (collectively, "Defendants") Motion to Dismiss Complaint. (Doc. 8). Plaintiffs Curtis and Joni Moore (collectively, "Plaintiffs") have filed a response in opposition (Doc. 16), and Defendants have filed a reply (Doc. 22). This matter now is ripe for review.

**I.     BACKGROUND**

Plaintiffs filed their Complaint against Defendants in this Court on October 31, 2014. (Doc. 1). The Complaint is based upon the following alleged facts:

Plaintiffs have a mortgage loan that is owned by Bank of New York. (Doc. 1, PageId 2). Caliber Home Loans is the servicing agent for Plaintiffs' mortgage loan on behalf of Bank of New York. (Id.). Caliber Home Loans is the successor to Vericrest Financial, Inc.[1] (Id., PageId 3).

Plaintiffs filed a Chapter 13 bankruptcy in the bankruptcy court for the Southern District of Ohio, Western Division. On September 29, 2010, Vericrest filed a Motion for Relief from Stay, alleging that Plaintiffs were in arrears over $4,000 from May 2010 through September

---

[1]Except where necessary to specifically distinguish between Vericrest and Caliber for the purposes of ruling on the motion to dismiss, the Court will refer to Vericrest and Caliber as "Caliber" throughout this Opinion and Order.

1

2010. (Doc. 1, PageId 3). On December 5, 2010, an Agreed Order was entered in the bankruptcy court regarding the Motion for Relief from Stay under which Plaintiffs were to pay $1,323.60 (two payments of $661.80) by December 15, 2010. (Id.). Starting January 1, 2011, Plaintiffs' monthly payment was to be reduced to $582.03 and Plaintiffs were to pay property taxes and insurance on their own. (Id.).

From January 2011 to June 2011, Plaintiffs received Notices of Default from Vericrest stating that Plaintiffs were in arrears since the Agreed Order. (Doc. 1, PageId 3). Documentation shows, however, that Plaintiffs paid each of the six payments timely. (Id.).

On or about October 28, 2013, Caliber took over servicing of Plaintiffs' mortgage loan. (Id.). Several months later, on March 4, 2014, Caliber filed a Notice of Default alleging that Plaintiffs were in arrears post-petition for the October 2013 to March 2014 payments, which totaled $4,331. (Id., PageId 4). The notice indicated that the payment due for those months was $687.46, rather than the $582.03 set forth in the Agreed Order. (Id.). No Notice of Mortgage Payment Change had been filed by Caliber or Vericrest, and documentation shows that Plaintiffs tendered the agreed-upon amount of $582.03 each month as required. (Id.). But starting in August 2011, the payments had been placed into the suspense account because the loan servicing agent was requiring $687.46 instead of the tendered $582.03. (Id.). As such, Plaintiffs were documented as falling behind in their payments because the payments were not applied to the mortgage loan. (Id.).[2]

On April 16, 2014, Caliber filed an Affidavit stating that Plaintiffs had not tendered the $4,124.76 to cure the default even though Plaintiffs' account had $1,227.60 in the suspense account. (Doc. 1, PageId 4). On April 24, 2014, the bankruptcy court granted Caliber relief from the stay. (Id.). On or about May 14, 2014, Caliber filed a foreclosure complaint against

---

[2] Plaintiffs also allege that Bank of New York filed incorrect Notices of Default (Doc. 1, PageId 7).

Plaintiffs, indicating Plaintiffs were in arrears from June 2010. (Id.). In the complaint, Caliber indicated that a Notice of Intent to Accelerate had been sent to Plaintiffs, which Plaintiffs denies occurred. (Id.). Thereafter, Plaintiffs filed a complaint with the Consumer Financial Protection Bureau regarding the alleged falsities in the foreclosure complaint. (Id., PageId 5).

On June 4, 2014, Plaintiffs received their discharge from the Chapter 13 bankruptcy. (Doc. 1, PageId 5). Plaintiffs then sought new counsel to defend against the foreclosure action. (Id.).

In July 2014, Plaintiffs sent a Qualified Written Request ("QWR"); Notice of Errors; Request for Information to Caliber arguing that the foreclosure was improper and that Plaintiffs' payments had been misapplied. (Id.). Caliber had not responded to the QWR as of the date of the Complaint. (Id.). On July 21, 2014, Defendants dismissed the foreclosure complaint without prejudice. (Id.).

Plaintiffs now bring the following claims against Defendants upon which Defendants have moved for dismissal under Fed. R. Civ. P. 12(b)(6): (1) Violation of 15 U.S.C. §§ 1692e and e(2), and 15 U.S.C. §§ 1692(f) and f(1) of the Fair Debt Collection Practices Act ("FDCPA"); (2) Breach of Contract; (3) Violation of 12 U.S.C. §§ 2505(e)(1)(A) and 2605(e)(2) of the Real Estate Settlement Procedures Act ("RESPA"); (4) Conversion; (5) Fraudulent Misrepresentation; (6) Violation of the Automatic Stay as set forth in 11 U.S.C. § 362(a)(3) and (a)(6); and (7) Violation of the Discharge Injunction as set forth in 11 U.S.C. § 524(i).

## II.   MOTION TO DISMISS STANDARD

When reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, this Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (internal quotations omitted). To properly state

a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]o survive a motion to dismiss, a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above the speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When a court is presented with a Rule 12(b)(6) motion, it may consider . . . exhibits attached to defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Devlin v. Kalm*, 531 F. App'x 697, 703 (6th Cir. 2013) (quoting *Bassett*, 528 F.3d at 426). However, "[w]hile documents integral to the complaint may be relied upon, even if they are not attached or incorporated by reference, it must also be clear that there exist no material disputed issue of fact regarding the relevance of the document." *Mediacom Southeast LLC v. BellSouth Telcoms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (citations, internal quotations, and alterations omitted).

## III.   ANALYSIS

Each of the seven claims upon which Defendants move for dismissal are addressed below.

### A.   FDCPA (Count One)

Plaintiffs argue that Caliber is a "debt collector" subject to the FDCPA and acted in violation of the FDCPA by misrepresenting the character, amount, or legal status of the debt and attempting to collect an amount not authorized by agreement or permitted by law. Plaintiffs

4

allege that Caliber improperly charged Plaintiffs an amount that was higher than the amount set forth in the Agreed Order, and that the higher payment amount caused Plaintiffs' lower monthly payments to be placed in a suspense account, which caused Plaintiffs to fall behind.  Plaintiffs further allege that Caliber submitted a Notice of Default and Affidavit as well as a foreclosure complaint seeking to collect a debt not owed to it.

Defendants argue that Plaintiffs have failed to state a claim under the FDCPA because the allegations are insufficient to show that Caliber is a debt collector subject to the FDCPA. Specifically, Defendants contend that Caliber is the successor to Vericrest Financial, and Vericrest Financial began performing servicing duties before any alleged defaults under the loan documents such that it does not fall within the definition of a "debt collector."

Plaintiffs' response is two-fold.  First, they argue that the Court cannot consider the document attached by Defendants to show that Vericrest Financial is the predecessor of Caliber because it was not referenced in Plaintiffs' Complaint.  Second, Plaintiffs argue that Defendants have not stated when Vericrest Financial began servicing the mortgage loan and therefore have not conclusively shown that Vericrest Financial would not fall within the FDCPA's definition of a debt collector.

Defendants reply that the Court may properly consider the attached document on a motion to dismiss and that the document and the Complaint plainly show that Vericrest Financial (n/k/a Caliber) began servicing the loan prior to Plaintiffs' purported defaults.

Pursuant to 15 U.S.C. § 1692a(6) of the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  Under 15 U.S.C. § 1692a(6)(F), the term "debt collector" does not include "any person collecting or

5

attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . . ." That § 1692(a)(6)(F)(iii) exception, "which may operate to remove a loan servicer from the definition of a 'debt collector', does not apply if the loan was in default at the time it was acquired by the servicing company, or if the servicing company treated it as such, regardless of the loan's actual status." *Shugart v. Ocwen Loan Servicing, LLC*, 747 F. Supp. 2d 938, 942-43 (S.D. Ohio 2010); *see also Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355 n. 4 (6th Cir. 2012) (citing *Shugart*).

Upon review, the Court concludes that the arguments of Defendants are insufficient to make dismissal appropriate at this time. While the Complaint and other supporting documents of which the Court can take judicial notice reflect that Vericrest Financial is the predecessor to Caliber, the records do not plainly reflect that Vericrest acquired the loan before it either was in default or treated as if in default. Plaintiffs allege that Vericrest Financial filed the Motion for Relief from Stay in September 2010 alleging Plaintiffs were in arrears from May to September 2010. From that allegation, it is plausible that Vericrest Financial began servicing the loan after it already was in default (i.e., after May 2010). Moreover, even Defendants' briefings do not clearly contradict that conclusion. Defendants contend that Vericrest Financial "started performing servicing duties as late as June 2010" and was "performing servicing duties as late as September 29, 2010." (Doc. 8, PageId 53, Doc. 22, PageId 164). Both dates are after May 2010 when Plaintiffs allegedly were first in arrears, and the allegations in this case stem, in part, from that initial collection effort. (Doc. 1, PageId 3; *see also* Doc. 8, PageId 53; Doc. 22, PageId 164; Doc. 22-1, PageId 179). Further, Plaintiffs allege that they received additional notices of default from January 2011 to June 2011 about their alleged defaults, and that Defendants began placing the money in the suspense account in August 2011. (Doc. 1, PageId 4). The next allegations

concern Caliber's alleged subsequent takeover of the servicing of that loan on or about October 28, 2013 and its filing of Notices of Default for payments between October 2013 to March 2014. (Doc. 1, PageId 3-4). Plaintiffs further allege that Caliber alleged in the foreclosure complaint filed on or about May 14, 2014 that Plaintiffs were in arrears from June 2010. (Doc. 1, PageId 4). Construing the allegations in the light most favorable to Plaintiffs, it is plausible from the facts alleged that Defendants treated Plaintiffs' loan as if it was in default during the requisite time periods. Accordingly, the allegations construed in the light most favorable to Plaintiffs make it plausible that Caliber, as the successor to Vericrest Financial, is a "debt collector" subject to the FDCPA provisions. Defendants' motion to dismiss on this basis is therefore denied.

## B.    Breach of Contract (Count Two)

Defendants argue that Plaintiffs cannot state a breach of contract claim based solely upon the terms of an agreed order filed in a Chapter 13 bankruptcy case. Relying on *Shillitani v. United States*, 384 U.S. 364, 370 (1966) and *In re Manufacturers Trading Corp.*, 194 F.2d 948, 955 (6th Cir. 1952), they contend that violation of a court order gives rise to a contempt motion before the issuing court but cannot constitute a breach of contract.

Plaintiffs respond that their breach of contract claim is not based solely upon the Agreed Order, but also is based on a mortgage contract between Plaintiffs and Bank of New York. Plaintiffs explain that they allege a breach of contract based upon the failure of Bank of New York, through its agent, to properly credit Plaintiffs' mortgage payments from 2011 through 2014 despite Plaintiffs performing as required. Plaintiffs further contend that Bank of New York and Plaintiffs entered into a new contract with the confirmation of Plaintiffs' Chapter 13 plan for the payment of $582.03 each month for their mortgage payment, which Bank of New York,

through its agent, breached by demanding a higher payment and causing the account to fall behind.

In the reply, Defendants dispute Plaintiffs' contentions. Defendants first assert that Plaintiffs' allegations in the Complaint that they timely tendered all mortgage payments under the mortgage contract is refuted by their Chapter 13 plan where they admit to owing an arrearage on their mortgage of $3,500 as of the date of their bankruptcy filings, such that Plaintiffs cannot demonstrate the performance element of such a claim. Defendants next dispute Plaintiffs' contention that the Chapter 13 plan constituted a new contract that Defendants breached, arguing that even though a confirmed plan constitutes a new arrangement between the debtor and creditors, the Bankruptcy Code prohibits a Chapter 13 debtor from modifying the terms of a loan secured by real property that is a debtor's principal residence, 11 U.S.C. § 1322(b)(2).

To prove a breach of contract under Ohio law, the following elements must be established: (1) the existence of a valid contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damages or loss to the plaintiff. *Samadder v. DMF of Ohio, Inc.*, 154 Ohio App. 3d 770 (10th Dist. App. 2003). Before addressing these elements, however, it is prudent to discuss the relationship between the mortgage contract and a bankruptcy order in the context of a bankruptcy case.

Chapter 13 of the Bankruptcy Code includes several provisions designed to deal specifically with mortgage contracts. Under 11 U.S.C. § 1322(b)(2), a Chapter 13 plan may

> modify the rights of holders of secured claims, other than a claim secured only a security interest in real property that is the debtor's principle residence, or the holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]

That provision grants mortgage lenders special rights, and "effectively incorporates a mortgage lender's pre-petition mortgage contract into the chapter 13 plan by precluding modification of the mortgage lender's contractual rights." *Cano v. GMAC Mortg. Corp. (In re Cano)*, 410 B.R.

8

506, 529 (Bankr. S.D. Tex. 2009). Nonetheless, Congress also balanced mortgage lenders'
protections by granting debtors the right to cure arrearages and remain current on the mortgage
debt. Under 11 U.S.C § 1322(b)(5), a plan may:

> notwithstanding paragraph (2) of this subsection, provide for the curing of any
> default within a reasonable time and maintenance of payments while the case
> is pending on any unsecured claim or secured claim on which the last payment
> is due after the date on which the final payment under the plan is due[.]

That provision provides an explicit exception to the anti-modification language in Section
1322(b)(2). An Agreed Order of the bankruptcy court defining the means by which the cure and
the maintenance of current payments occurs is "like a consent decree, . . . in the nature of a
contract, and the interpretation of its terms presents a question of contract interpretation." *City of
Covington v. Covington Landing Ltd. P'ship*, 71 F.3d 1221, 1227 (6th Cir. 1995); *see also In re
Dow Corning Corp.*, 456 F.3d 668, 676 (6th Cir. 2006) (a confirmed plan is "effectively a new
contract between the debtor and its creditors"). Stated differently, the mortgage lender retains its
original contract rights but those contract rights must be exercised in the manner allowed by the
Bankruptcy Code, Bankruptcy Rules, and court orders. *See In re Cano*, 410 B.R. at 521.

With those principles in mind, the Court finds that Plaintiffs have stated a plausible claim
for breach of contract at this time. With respect to the existence of a valid contract, there is no
dispute that the mortgage contract at least plausibly constitutes a valid contract. The confirmed
plan as a whole likewise at least plausibly constitutes a new contract, as indicated above.
Looking at the Agreed Order alone, it is akin to a consent decree, both of which are a hybrid
between an agreed-upon contract between the parties and a judicial order. *United States v. ITT
Continental Baking Co.*, 420 U.S. 223, 237 n. 10 (1975). The judicial order, however, rests upon
an agreement between the parties. Because consent decrees and agreed orders share the same
attributes as contracts, they should be treated like contracts and the scope of those contracts

should be discerned within its four corners.[3]  As such, Plaintiffs have plausibly satisfied the first element of the breach of contract claim.

On the "performance" element, the Court finds that Plaintiffs' allegations are sufficient at this stage.  Plaintiffs allege that they "timely paid all payments as required under the promissory note, and mortgage contract, and Agreed Order in the bankruptcy." (Doc. 1, PageId 7).  While Defendants attach Plaintiffs' Chapter 13 plan filed at the time of the bankruptcy petition which contains a statement that Plaintiffs had a default of $3,500 to Vericrest (Doc. 22, PageId 22), a hearsay statement in a single court document does not conclusively demonstrate a lack of performance that precludes Plaintiffs' breach of contract claim at this time.[4]  More information is necessary to allow the Court to determine the nature, extent, timing, and context of the payments, any alleged default under the mortgage contract, and the effect of the Agreed Order on any purported pre-petition default.

As for the "breach" element, Plaintiffs allege and argue that Bank of New York failed to properly credit Plaintiffs' mortgage payments from 2011 through 2014 as required under the mortgage contract and Agreed Order, improperly raised the amount due, and incorrectly filed Notices of Default during that time.  (Doc. 1, PageId 7).  At this time, those allegations plausibly satisfy this element.

While it is not clear whether this claim may afford relief that is unavailable under other claims or is simply duplicative of claims arising under the Bankruptcy Code, the allegations

---

[3] To this end, the interpretation of an Agreed Order does not necessitate an examination of the underlying dispute and can stand apart from the bankruptcy case.  Further, district courts have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.  28 U.S.C. § 1334.

[4] The Court may take judicial notice of the court filings.  *New Eng. Health Care Emples. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) ("A court that is ruling on a Rule 12(b)(6)motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."); *Hill v. Javitch*, 574 F. Supp. 2d 819, 821 n.1 (S.D. Ohio 2008) (taking judicial notice of court documents filed with Rule 12(b)(6) motion).

construed in the light most favorable to Plaintiffs are sufficient to allow the breach of contract claim in Count Two to survive dismissal at this early stage.

### C.  RESPA Violations (Count Three)

Defendants argue that Plaintiffs' claims for violations of RESPA are insufficient for two primary reasons.  First, Defendants contend that Plaintiffs have pled only conclusory facts as to a pattern or practice of RESPA violations and that a single failure to properly respond to a proper request for information under RESPA does not constitute a pattern or practice.  Second, Defendants contend that Plaintiffs have not shown a causal link between actual damages and the servicer's failure to respond under RESPA because Caliber provided the information requested in the alleged QWR when it responded to a CFPB inquiry prior to the OWR.  Defendants state that Caliber complied with the intent of RESPA, and that, as a policy matter, RESPA protects servicers who act in good faith compliance.  Defendants further indicate that Plaintiffs had access to discovery in the state-court foreclosure proceedings at the time they sent the alleged QWR to Caliber and that Caliber cannot be liable for failing to respond to alleged a QWR during litigation that was not addressed to the attorneys.

Plaintiffs respond that Defendants' arguments do not demonstrate that dismissal is warranted.  First, Plaintiffs contend that they have sufficiently pled statutory damages, which are recoverable under RESPA.  Relying on *Marais v. Chase Home Finance, Inc., LLC*, 24 F. Supp. 3d 712, 730 (S.D. Ohio 2014), they argue that they have pled three violations of RESPA (i.e., failure to acknowledge the OWR, failure to investigate Plaintiffs' disputes, and failure to respond), which is sufficient to survive dismissal.  Second, Plaintiffs contend that they have pled a causal link, alleging that they sent a QWR to Caliber and that Caliber did not respond.  They state that Defendants' attempt to argue that the claim should be dismissed because Defendants sent information to Plaintiffs *prior* to the QWR is improper and relies on matters outside the

pleadings that are not central to Plaintiffs' claims. In addition, Plaintiffs argue that nothing in RESPA precludes a QWR from being sent during litigation.

In the reply, Defendants reiterate their prior positions, and argue that a failure to respond to one QWR does not constitute three separate violations for purposes of pleading a pattern or practice, and that Plaintiffs still have failed to show a causal link between actual damages and Caliber's alleged failure to respond to the QWR.

Upon review, the Court finds that dismissal is not appropriate at this early stage. Pursuant to 12 U.S.C. § 2605(e)(1):

> If any servicer of a federally related mortgage loan received a qualified written request ["QWR"] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days . . . . unless the action request is taken within such period.

In the Complaint, Plaintiffs allege that they sent Caliber a QWR and received no response from Caliber, within the requisite timeframe or otherwise. (Doc. 1, PageId 5, 8). Such allegations are sufficient to allege a violation of this provision.

Section 2605(e)(2) provides:

> Not later than 30 days . . . after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction . . .
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes:
>
> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>
> (ii) the name and telephone number of an individual employer by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

In the Complaint, Plaintiffs allege that Caliber did not respond in any way to the QWR, although they thereafter dismissed the foreclosure complaint without prejudice, and indicate that the failure to respond reflects a failure to investigate as required under RESPA.  (Doc. 1, PageId 5, 8).  These allegations are sufficient to allege violations of these provisions.

With respect to damages, section 2605(f) states:

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals.  In the case of any action by an individual, an amount equal to the sum of--

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

The issue here has two parts:  (1) have Plaintiffs sufficiently alleged a causal connection between the violation and any purported actual damages?; and (2) have Plaintiffs sufficiently alleged a pattern or practice of noncompliance?

As stated above, Plaintiffs have sufficiently alleged plausible violations of the statutory provisions.  Nothing in these statutory provisions excuses a loan servicer from fulfilling its obligations thereunder, including the availability of discovery in litigation or a prior response to a CFPB complaint.  *See Figard v. PHH Mortg. Corp.*, 382 B.R. 695, 712 (Bankr. W.D. Pa. 2008); *see also* 12 C.F.R. § 1024, Supplement I, ¶ 35(e)(3)(i)(B) (indicating servicer compliance with section 1024.35(e) required even when foreclosure sale pending).  Plaintiffs also have pled actual damages relating to the misapplication of payments to their account, the dismissal of a foreclosure action "without prejudice," and out-of-pocket costs of representation to try to resolve the issue.  (Doc. 1, PageId 5).  From those allegations, it is reasonable to infer that Plaintiffs may

13

also have incurred other actual damages. *See Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 720 (6th Cir. 2013). As for Defendants' position that its prior response to the CFPB complaint negates any actual damages resulting from the alleged violations of the RESPA, that argument presents matters outside the pleadings and not central to the Complaint that the Court need not consider in ruling on a motion to dismiss. In any event, the response to the CFPB complaint merely creates issues of fact as to whether each of the alleged violations caused Plaintiffs' alleged actual damages.

Turning to the second issue, the Court agrees with Plaintiffs that they have sufficiently alleged three separate violations of RESPA. Section 2605(f) indicates that a failure to comply with "any provision" gives rise to damages for "each such failure," such that a company's failure to comply with three provisions of the statute can render them liable for separate damages for each such failure. But each of those violations stem from one QWR sent by Plaintiffs to Caliber. Aside from conclusory statements, Plaintiffs point to no other factual allegations from which a pattern or practice may reasonably be inferred. The alleged failure to respond to a single QWR does not plausibly show a pattern or practice of noncompliance with RESPA to justify an award of statutory damages. *See, e.g.*, *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013); *In re Maxwell*, 281 B.R. 101, 123024 (Bankr. D. Mass 2002). Accordingly, Plaintiffs have failed to sufficiently plead a pattern or practice necessary to recover statutory damages under RESPA.

Accordingly, Defendants' motion to dismiss Count Three is denied in part, as Count Three may proceed on the basis of alleged actual damages.

### D.  Conversion (Count Four)

In Ohio, the elements of conversion typically include: "(1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a

14

wrongful act or disposition of plaintiff's property rights; and (3) damages."  *Dice v. White Family Cos.*, 173 Ohio App. 3d 474, 477 (2d Dist. App. 2007).  "Where conversion is premised on the unlawful retention of property, the plaintiff must establish: (1) he or she demanded the return of the property from the possessor after the possessor exerted dominion or control over the property, and (2) that the possessor refused to deliver the property to its rightful owner."  *Id.* (internal quotations omitted).  "An action alleging conversion of cash lies only where the money involved is 'earmarked' or is specific money capable of identification, e.g., money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered, and where there is an obligation to keep intact and deliver this specific money rather than to merely deliver a certain sum."  *Fairbanks Mobile Wash, Inc. v. Hubbell*, 2009-Ohio-558, ¶53 (12th Dist. App. Feb. 9, 2009) (citing *Haul Transport of VA, Inc. v. Morgan*, No. 13859, 1995 Ohio App. LEXIS 2240 (2d Dist. App. June 2, 1995)).

Defendants move to dismiss Plaintiffs' conversion claim against Caliber on several grounds, which are discussed below.

### 1.  Duty

Defendants argue that Count Four should be dismissed because Plaintiffs do not recite any independent duties owed to Plaintiffs outside the contractual relationship.  Plaintiffs respond that duty is not an element of conversion.  While not specifically addressing the issue in the reply as to conversion, Defendants argue with respect to Count Five that Plaintiffs must, but have not, alleged a duty or facts arising outside of the contractual relationship.

The Court agrees with Plaintiffs that the elements of conversion do not expressly include "duty" as a prerequisite to a viable claim.  Defendants' argument, however, is that Caliber cannot be liable for the tort claim where it arises solely out of a mortgage contract, loan documents, or the Chapter 13 bankruptcy relating to the same.  The Court disagrees.  "Under Ohio law,

'accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done[.']'" *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 (6th Cir. 2003) (quoting *Hunsicker v. Buckeye Union Cas. Co.*, 95 Ohio App. 241 (1st Dist. App. 1953)).  When a party negligently fails to observe any of those conditions, a tort claim for negligence may arise in addition to a claim for breach of contract.  *Id.*  By implication, an *intentional* failure of a party to observe any of those conditions also may give rise to tort liability in addition to a claim for breach of contract.  *Id.*  Indeed, Ohio courts have recognized that "'[u]nder modern rules of pleading, an action for tort may be combined with and arise from the same operative facts as a breach-of-contract action.'"  *INEOS USA LLC v. Furmanite Am., Inc.*, 2014-Ohio-4996, ¶ 21 (3d Dist. App. Nov. 10, 2014) (quoting *Burns v. Prudential Sec., Inc.*, 167 Ohio App. 3d 809 (3d Dist. 2006)).  "A tort claim can proceed where 'the facts of the case show an intentional tort committed independently, but in connection with a breach of contract . . . .'"  *INEOS USA*, 2014-Ohio-4996, ¶ 21 (quoting *Burns*, 167 Ohio App. 3d 809).  But the tort claim must also allege damages that are separate and distinct from the damages resulting from the breach of contract.  *INEOS USA,* 2014-Ohio-4996, ¶ 21 (citing *Strategy Group for Media, Inc. v. Lowden*, 2013-Ohio-1330, ¶ 30 (5th Dist. App. Mar. 21, 2013)).  Thus, the Court must consider whether the conversion claim plausibly alleges that Caliber breached a duty independent of the contract and whether the alleged damages plausibly are separate and distinct from those alleged as to the breach of contract.

Comparing the allegations of conversion to those of breach of contract, the Court first notes that the conversion claim focuses on the actions of Caliber and/or Vericrest whereas the breach of contract claim concerns the alleged contracts between Bank of New York and Plaintiffs.  The conversion claim relates to Caliber's and/or Vericrest's actions upon receipt of payments from Plaintiffs as the loan servicer for Bank of New York.  Plaintiffs allege that they

tendered the requisite amounts "earmarked for the monthly mortgage payment, as set forth in the Agreed Order" and that Caliber began to demand $687.46 for each monthly payment and then misapplied their payments to a suspense account, causing Plaintiffs to fall behind in their mortgage payments.  (Doc. 1, PageId 9).  Plaintiffs allege that "Caliber was required to apply Plaintiffs' payments in a certain manner" but demanded an incorrect amount, misappl[ied] the payments, and appl[ied] the money toward late charges that were not owed."  (Doc. 1, PageId 10).  In comparison, the breach of contract claim against Bank of New York concerns its failure, albeit through Caliber, to abide by the promissory note, mortgage contract, and Agreed Order in the bankruptcy by not crediting monthly payments, filing multiple incorrect Notices of Default over three-year period, and filing a foreclosure action.  (Doc. 1, PageId 6-8).  Thus, even though the breach-of-contract claim and conversion claim are intertwined, the Court cannot conclusively determine at this time that the duties breached are identical.

As for damages, Defendants have not argued, and thus, have not shown, that it is not plausible that the damages recoverable for the claims are separate and distinct.  Construing the allegations in the light most favorable to Plaintiffs at this time, the Court concludes that the recoverable damages plausibly are separate and distinct.  (*See* Doc. 1, PageId 8, 10).

Accordingly, Count Four shall not be dismissed on this basis.

### 2.  Insufficient Allegations

Defendants argue that Plaintiffs cannot maintain a claim for conversion because Plaintiffs have alleged only that they do not agree with how Defendants applied Plaintiffs' loan payments.  Specifically, Defendants argue that Plaintiffs have failed to allege they demanded a return of the property from Defendants.  Defendants further contend that Plaintiffs misstate Ohio law because under Ohio law a loan servicer is the lender's agent and acts with full authority of the lender so that once money was paid to Caliber, Plaintiffs no longer owned it.

17

Plaintiffs respond that Defendants' motion to dismiss Count Four should be denied for several reasons. First, they argue that the Complaint alleges that they retained ownership over the mortgage payments at the time of conversion and that their ownership interest was not relinquished until Caliber gave the money to Bank of New York. They claim Caliber had only a possessory interest, not an ownership interest in the money. Second, Plaintiffs point out that they pled that Caliber converted the money by "demanding an incorrect amount, misapplying the payments, and applying the money toward later charges that were not owed." Third, Plaintiffs contend that they pled damages in paragraphs 47 and 50 of the Complaint, including such damages as having to defend an improper foreclosure, incurring legal fees, and the money tendered to Caliber but never properly applied.

Defendants disagree with Plaintiffs' analysis, arguing that facts suggesting a debtor-creditor relationship do not give rise to a claim for conversion.

Here, the Court finds that Plaintiffs have stated a plausible claim for the tort of conversion. The Court must accept as true Plaintiffs' allegations that Plaintiffs tendered the monthly payments to Caliber, that in doing so Plaintiffs did not relinquish ownership in the money until the money was sent to Bank of New York, and that Caliber failed to properly apply funds "earmarked for the monthly mortgage payment" to Plaintiffs' mortgage account. (Doc. 1, PageId 4, 9, 10). Further, Plaintiffs allege that Caliber demanded an incorrect amount, misapplied the payments, and applied the payments toward late charges that were not owed. (Doc. 1, PageId 9). Such actions plausibly demonstrate an act of dominion by Caliber that is wrongfully taken, even though Caliber came into lawful possession of Plaintiffs' payment. Plaintiffs further allege that they submitted a request to Caliber and sought to have the funds properly applied to their account to no avail. (Doc. 1, PageId 5). As alleged, Caliber continued not to apply the money earmarked for the mortgage payment to the mortgage payment. It is not

clear at this time the Caliber was to deliver the money for payment of the mortgage held by Bank of New York, and the cases *U.S. Bank, N.A. v. Zokle*, 2014-Ohio-636, ¶ 25 (6th Dist. App. Feb. 21, 2014), *McWeeney v. McWeeney*, 255 B.R. 3 (Bankr. S.D. Ohio 2000), and *Haul Transport of VA, Inc. v. Morgan*, No. 14859, 1995 Ohio App. LEXIS 2240 (2d Dist. App. June 2, 1995), upon which Defendants rely do not conclusively demonstrate that a plausible claim for conversion cannot exist in this matter.   Accordingly, the Court is unable to conclude that Plaintiffs can prove no set of facts to support a conversion claim and Defendants' motion to dismiss Count Four is denied.  *See, e.g., Johnson v. Citimortgage, Inc.*, 351 F. Supp. 2d 1368, 1372 (N.D. Ga. 2004) (denying motion to dismiss claim for conversion where plaintiff alleged that the defendant Citimortgage failed to apply his loan payment to his account as required and refused the plaintiff's requests seeking to have the funds applied properly to his mortgage); Restatement (Second) of Torts, § 227 ("One who uses a chattel in a manner which is a serious violation of the right of another to control its use is subject to liability to the other for conversion.").[5]

### E.      Fraudulent Misrepresentation (Count Five)

To state a claim for fraudulent misrepresentation in Ohio, a complaint must include allegations of: "(1) a representation or, when there is a duty to disclose, a concealment of a fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard as to whether it is true or false that knowledge may be inferred; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by that reliance."  *Stuckey v. Online Resources Corp.*, 819 F. Supp. 2d 673, 682 (S.D. Ohio 2011) (citing *Williams v. Aetna Fin. Co.*, 83 Ohio St. 3d 464 (1998)).   "'The elements of fraud must be directed against the alleged

---

[5] It is noted that the allegations concerning conversion appear to overlap substantially with those asserted with respect to the alleged violation of the automatic stay in Count Six.  The parties do not address the relationship between common-law claims and claims asserted in bankruptcy, and thus, the Court need not consider that issue here.

victim.'" *Wiles v. Miller*, 2013-Ohio-3625, ¶ 33 (10th Dist. App. Aug. 22, 2013) (quoting *Moses v. Sterling Commerce Am., Inc.*, 2002-Ohio-4327, ¶ 21 (10th Dist. App. Aug. 15, 2002)). "'A plaintiff fails to state a valid cause of action for fraud when he alleges that a third party relied on misrepresentations made by a defendant and that he suffered injury from that third party's reliance.'" *Wiles*, 2013-Ohio-3625, ¶ 33 (quoting *Moses*, 2002-Ohio-4327, ¶ 21).

Under both Fed. R. Civ. P. 9(b) and Ohio R. Civ. P. 9(b), the circumstances constituting fraud must be pled with particularity, although malice, intent, knowledge and other conditions of a person's mind may be alleged generally.

Defendants move to dismiss Plaintiffs' fraudulent misrepresentation claim against Caliber on several grounds, which are discussed below.

### 1. Duty

Defendants argue that Count Five should be dismissed because Plaintiffs do not recite any independent duties owed to Plaintiffs outside the contractual relationship. Plaintiffs respond that duty is not an element of fraudulent misrepresentation. Defendants reply that Plaintiffs must, but have not, alleged a duty or facts arising outside of the contractual relationship.

The Court agrees with Plaintiffs that the elements of fraudulent misrepresentation do not include "duty" as a prerequisite to a plausible claim of fraud based upon affirmative representations made by Defendants. Defendants' argument, however, is that Caliber cannot be liable for the tort claim where it arises solely out of a mortgage contract, loan documents, or the Chapter 13 bankruptcy relating to the same. The Court disagrees. As explained above in Count Four, an "action for tort may be combined with and arise from the same operative facts as a breach-of-contract action.'" *INEOS USA LLC v. Furmanite Am., Inc.*, 2014-Ohio-4996, ¶ 21 (3d Dist. App. Nov. 10, 2014) (quoting *Burns v. Prudential Securities, Inc.*, 167 Ohio App. 3d 809 (3d Dist. 2006)). "A tort claim can proceed where 'the facts of the case show an intentional tort

committed independently, but in connection with a breach of contract . . . .'" *INEOS USA*, 2014-Ohio-4996, ¶ 21 (quoting *Burns*, 167 Ohio App. 3d 809). But the tort claim must also allege damages that are separate and distinct from the damages resulting from the breach of contract. *INEOS USA,* 2014-Ohio-4996, ¶ 21 (citing *Strategy Group for Media, Inc. v. Lowden*, 2013-Ohio-1330, ¶ 30 (5th Dist. App. Mar. 21, 2013)). Thus, the Court must consider whether the fraud claim plausibly alleges that Caliber breached a duty independent of the contract and whether the alleged damages plausibly are separate and distinct from those alleged as to the breach of contract.

Comparing the allegations of fraud to those of breach of contract, the Court first notes that the fraud claim is brought against Caliber whereas the breach of contract claim is brought against Bank of New York. The fraud claim against Caliber concerns its representations in bankruptcy court. Plaintiffs allege that Caliber "misrepresented to Plaintiffs and the bankruptcy court that the Plaintiffs were grossly behind in their mortgage payments, when in fact Plaintiffs had made every monthly payment." (Doc. 1, PageId 11). Plaintiffs allege specifically that "[o]n April 16, 2014, Caliber filed an Affidavit stating that Plaintiffs had not tendered $4,124.76 to cure the default [even though] according to the payment history attached to this Affidavit, as of April 9, 2014, Plaintiffs' account had $1,227.60 sitting in the suspense account." (Doc. 1, PageId 5). Plaintiffs further allege that on or about May 14, 2014, Caliber filed a foreclosure complaint against Plaintiffs, which "indicated that Plaintiffs were in arrears from June 2010[, which] was incorrect according to Caliber's own April 2014 Affidavit." (Doc. 1, PageId 4). The indication in the foreclosure complaint that a Notice of Intent to Accelerate had been sent to Plaintiffs also is alleged to have been false. (Id.). In contrast, the breach of contract claim against Bank of New York concerns its failure, through Caliber, to abide by the promissory note, mortgage contract, and Agreed Order in the bankruptcy by not crediting monthly payments,

filing multiple incorrect Notices of Default over three-year period, and filing a foreclosure action.  (Doc. 1, PageId 6-8).  Thus, the breach-of-contract claim and fraud claim are intertwined, but the Court cannot conclusively determine at this time that the duties breached are identical.

As for damages, Defendants have not argued, and thus, have not shown, that it is not plausible that the damages recoverable for the claims are separate and distinct.  Construing the allegations in the light most favorable to Plaintiffs at this time, the Court concludes that the recoverable damages plausibly are separate and distinct.  (*See* Doc. 1, PageId 8, 11).

Accordingly, Count Five shall not be dismissed on this basis.

### 2.  Pleading Fraud with Particularity

Defendants argue that Count Five should be dismissed against Caliber because Plaintiffs do not plead fraud with particularity.  Plaintiffs respond that they pled their fraudulent misrepresentation claim with particularity, citing to the particular allegations supporting the claim.

Due to the "high risk of abusive litigation," *Twombly*, 550 U.S. at 569 n.14, a party alleging fraud "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  This means that a plaintiff must specify 1) what the fraudulent statements were, 2) who made them, 3) when and where the statements were made, and 4) why the statements were fraudulent. *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012).

Here, Plaintiffs have met their burden of pleading fraud with particularity.  As set forth previously, Plaintiffs have identified the fraudulent statements, which were allegedly made by Caliber in the bankruptcy proceedings, and they have explained why they believe those statements were false.  Plaintiffs have alleged that Caliber "misrepresented to Plaintiffs and the

bankruptcy court that the Plaintiffs were grossly behind in their mortgage payments, when in fact Plaintiffs had made every monthly payment." (Doc. 1, PageId 11).  Plaintiffs specifically allege that "[o]n April 16, 2014, Caliber filed an Affidavit stating that Plaintiffs had not tendered $4,124.76 to cure the default [even though] according to the payment history attached to this Affidavit, as of April 9, 2014, Plaintiffs' account had $1,227.60 sitting in the suspense account." (Doc. 1, PageId 5).  Plaintiffs further allege that on or about May 14, 2014, Caliber filed a foreclosure complaint against Plaintiffs, which "indicated that Plaintiffs were in arrears from June 2010[, which] was incorrect according to Caliber's own April 2014 Affidavit."  (Doc. 1, PageId 4).  The indication in the foreclosure complaint that a Notice of Intent to Accelerate had been sent to Plaintiff also is alleged to have been false.  (Id.).  These allegations are sufficient to satisfy their burden under Rule 9(b).

Accordingly, Count Five shall not be dismissed on this basis.

### 3.  Representations to Court and Justifiable Reliance

Defendants argue that Count Five should be dismissed against Caliber because fraud cannot arise out of litigation pleadings since those representations are made to a court, which is a third party, and  Plaintiffs do not allege justifiable reliance on representations outside of the court proceedings or inside the court proceedings.

Plaintiffs respond that a fraudulent misrepresentation claim can be based on filings made in the bankruptcy court, and that they sufficiently pled justifiable reliance by alleging that Defendants knew that Plaintiffs would justifiably rely on the representations by having to pay more money to correct the incorrect notices of default and unwarranted late charges and to hire counsel to defend against an improper foreclosure.

Defendants further contend that the fact that the fraud facts arise out of documents filed in the bankruptcy proceeding is material because they cannot demonstrate justifiable reliance on

the representations while represented by counsel during the Chapter 13 proceedings and when given a chance to respond to the allegedly fraudulent filings in the bankruptcy court.

The Court agrees with Defendants that Plaintiffs' allegations do not plausibly show justifiable reliance on the alleged fraudulent misrepresentations of Caliber. To the contrary, the allegations indicate that Plaintiffs did not rely on Defendants' alleged misrepresentations but rather disputed—and contested—the Defendants' representations. Plaintiffs allege that Caliber filed an Affidavit as to the amount not tendered by Plaintiffs to cure the default, but then they point out that the payment history <u>attached</u> to the Affidavit showed that Plaintiffs had money sitting in the suspense account such that the alleged incorrectness of the statement was plain from the filing and Plaintiffs would be aware the representation did not take into account the money held in the suspense account. (Doc. 1, PageId 4). They further allege that they had made all of their monthly payments as required, a fact of which Plaintiffs should have been aware and which would indicate that the statement by Caliber was incorrect. As for the alleged misrepresentations in the foreclosure complaint, Plaintiffs allege that they contested the complaint through various procedures, including filing a complaint with the Consumer Financial Protection Bureau, obtaining new counsel to defend against the improper foreclosure and other issues, and sending a Qualified Written Request to Caliber. (Doc. 1, PageId 4-5). Such actions alleged by Plaintiffs demonstrate that Plaintiffs did not justifiably rely on the truth of the representations but rather responded to and disputed the representations made by Caliber. An action taken in response to what is believed to be a false representation is distinguishable from an action taken in justifiable reliance on the truth of the allegedly false representation.

To the extent Plaintiffs allege that the bankruptcy court relied upon Caliber's alleged fraudulent misrepresentations which in turn caused Plaintiffs injury, such allegations are insufficient to state a claim for relief. *See Wiles v. Miller*, 2013-Ohio-3625, ¶ 33 (10th Dist.

App. Aug. 22, 2013) (quoting *Moses v. Sterling Commerce Am., Inc.*, No. 02Ap-161, 2002-Ohio-4327, ¶ 21 (10th Dist. App. Aug. 15, 2002)) ("A plaintiff fails to state a valid cause of action for fraud when he alleges that a third party relied on misrepresentations made by a defendant and that he suffered injury from that third party's reliance.").

Accordingly, Plaintiffs have not stated a plausible claim for fraudulent misrepresentation in Count Five.

### F.    Violation of Automatic Stay (Count Six)

Defendants argue that Count Six must be dismissed because Plaintiffs cannot maintain a claim for violation of the automatic stay under 11 U.S.C. § 362 when Defendants did not take steps to collect a debt against Plaintiffs outside the Plaintiffs' Chapter 13 case without Bankruptcy Court approval.

Plaintiffs reply that Defendants' motion to dismiss should be denied because their claim is based on (1) the misapplication of plan payments before the April 2014 relief from stay was granted, and (2) increasing Plaintiffs' mortgage payment between December 2010 and April 2014 before the bankruptcy court granted Defendants' relief from the stay.

In the reply, Defendants argue that the automatic stay provision is not so broad to make internal misapplications of payments rise to the level of a violation and that a confirmed plan constitutes a new arrangement between the debtor and creditors such that any errors in plan enforcement (including the increase of plan payments) does not rise to the level of an automatic stay violation.

Plaintiffs bring Count Six pursuant to 11 U.S.C. §§ 362(a)(3) and (a)(6).  (Doc. 1, PageId 11).  Those provisions state:

> (a) Except as provided in subsection (b) of this section, a petition filed under
>     section 301, 302, or 303 or this title . . . operates as a stay, applicable to all
>     entities, of--

25

. . .

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

. . .

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. §§ 362(a)(3), (a)(6).

Here, the Court finds that Plaintiffs have stated a plausible claim for violation of the above automatic stay provisions.  The time period upon which the claim focuses is between the bankruptcy court's entry of the December 15, 2010 Agreed Order and the April 24, 2014 decision of the bankruptcy court to grant Caliber relief from the stay.  (Doc. 1, PageId 4). Plaintiffs allege that the Agreed Order required Plaintiffs to pay $1,323.60 by December 15, 2010 and also reduced Plaintiffs' monthly payment to $582.03 beginning January 1, 2011, with Plaintiffs to pay the property taxes and insurance on their own.  (Doc. 1, PageId 3; *see also* Doc. 8-1).  Plaintiffs further allege that they tendered the requisite payments to Vericrest/Caliber, but starting in August 2011, Vericrest/Caliber continued to treat the mortgage loan as if it was in default and began putting their mortgage payments into a suspense account and did not apply the payments to the loan pursuant to the Agreed Order.  (Doc. 1, PageId 3-4).  The alleged failure to apply the mortgage payments caused Plaintiffs to fall behind in their mortgage payments because the payments were not being applied to the loan.  (Id.).  Plaintiffs further allege that Caliber later represented that the mortgage payment had increased to $687.46 rather than the $582.03 set forth in the Agreed Order, and that neither Caliber nor Vericrest ever had filed a Notice of Mortgage Payment Change.  (Id., PageId 4).  The failure to apply the mortgage payments to the loan along with the purportedly incorrect increase in the mortgage payment led to Caliber filing an Affidavit in the bankruptcy court stating Plaintiffs had not tendered the necessary amounts to cure the

defaults, which resulted in Caliber obtaining relief from the automatic stay and subsequently filing a foreclosure action.  (Id.).

The authority concerning whether such allegations allege a violation of the automatic stay is not entirely straightforward or consistent.  Within the courts of this circuit, there is authority for finding the allegations are sufficient to state a plausible violation of the automatic stay.  *See, e.g.*, *In re Villwock*, Case No. 07-40796, Adversary No. 09-04319 (Bankr. N.D. Ohio Aug. 10, 2010) (citing *Galloway v. EMC Mortg. Corp.*, No. 05-13504, Adversary No. 09-01124, 2010 WL 364336 (Bankr. N.D. Miss. Jan. 29, 2010); *Myles v. Wells Fargo Bank, N.A.*, 395 B.R. 599 (Bankr. M.D. La. 2008); *Sanchez v. Ameriquest Mortg. Co.*, 372 B.R. 289 (Bankr. S.D. Tex. 2007)); *In re Szoke*, Case No. 06-42182, Adversary No. 12-4048 (Bankr. N.D. Ohio Aug. 28, 2012).   But in *In re Cano*, 410 B.R. 506 (Bankr. S.D. Tex. 2009), the bankruptcy court articulates several reasons for finding such allegations do not rise to the level of an automatic stay violation.  Nonetheless, this Court follows the determinations from courts within this circuit, and holds that the facts yet to be discovered are critical to the ultimate determination.

Here, Plaintiffs' allegations indicate that they made payments voluntarily to Caliber per the Agreed Order such that Caliber was not attempting to involuntarily take that money from the bankruptcy estate in the first instance.  But Plaintiffs also allege that Caliber did not apply the payments to the loan *at all* but kept the payments in a suspense account.  It thus is not necessarily the same situation presented in *In re Cano* where the money went into a general account and then later was allocated to individual accounts and the situation is consistent with those in *In re Villwock* and *In re Szoke* where the courts determined that misapplications of payments plausibly may violate the automatic stay.  Further, the process and authority by which Caliber obtained and placed the money in the suspense account is not clear at this time.  As alleged by Plaintiffs, however, the continued failure to apply the payments to the loan placed Plaintiffs in default

27

which led to Caliber seeking and obtaining relief from the automatic stay and pursuing a foreclosure action against Plaintiffs.

As for the increase in the mortgage payments, the reason for the increased charge is not entirely clear at this time.  But the allegations plausibly suggest that the act was not only inconsistent with the Agreed Order but was either an act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate or was an attempt collect, assess, or recover a claim against the debtor that arose before the commencement of the case.  Indeed, more discovery is necessary to fully understand whether the act violates the automatic stay.

Accordingly, those multiple allegations as to the misapplication of payments and the increased amount of the mortgage payment are sufficient to state a viable claim for the violation of the automatic stay under § 362.[6]

### G.    Violation of Discharge Injunction (Count Seven)

Defendants argue that Count Seven should be dismissed because (1) 11 U.S.C. § 524 does not provide a private right of action; and (2) Plaintiffs lack standing to enforce orders entered outside the bankruptcy case.

---

[6]Defendants have not argued that the claim for violation of the automatic stay is more properly heard by the bankruptcy court.  However, the Court may raise issues of subject-matter jurisdiction *sua sponte*. *Ford v. Hamilton Inv., Inc.*, 29 F.3d 255, 257 (6th Cir. 1994).  Under 28 U.S.C. § 1331, district courts have original jurisdiction of "all civil actions arising under the Constitution, laws, or treaties of the United States."  Further, the district courts have original jurisdiction over all civil proceedings arising under title 11 or arising in or related to cases under title 11, as explicitly stated by 28 U.S.C. § 1334.  Nonetheless, the district courts may "provide that any or all cases under title 11 and any or all proceedings arising under title 11 be referred to the bankruptcy court for that district.  28 U.S.C. § 157(a).  In this matter, the Court declines to transfer the claim to the bankruptcy court because Defendants have not challenged the adjudication of such a claim in the district court, this Court has original jurisdiction over the claim, the bankruptcy has been discharged, and other claims remain pending in this matter.  *See Marshall v. PNC Bank, N.A.*, 491 B.R. 217 n. 15 (Bankr. S.D. Ohio 2012) (discussing jurisdiction of district court to adjudicate claims for violations of the automatic stay); *see also Justice Cometh, Ltd. v. Lambert*, 426 F.3d 1342 (11th Cir. 2005) (holding that the district court had subject matter jurisdiction to directly adjudicate claim for violation of automatic stay in the plaintiff's bankruptcy proceeding); *Price v. Rochford*, 947 F.2d 829, 831-32, n. 2 (7th Cir. 1991) (finding that district court had jurisdiction to adjudicate plaintiff's claim for violation of the automatic stay and noting that "after a bankruptcy is over, it may well be more appropriate to bring suit in district court, especially when other claims are attached.").

Plaintiffs respond that *Pertuso v. Ford Motor Credit Company*, 233 F.3d 417, 422-23 (6th Cir. 2000), upon which Defendants rely was decided prior to the amendments of 2005 that added 11 U.S.C. § 524(i), which was intended to give debtors a cause of action and remedy for misapplication of payments after the discharge injunction.

Defendants reply that the cases relied upon by Plaintiffs do not support the conclusion that *Pertuso* was abrogated and that 11 U.S.C. § 524(i) created a private cause of action for violations of the discharge injunction.

As Defendants correctly point out, the Sixth Circuit has determined that there is no private right of action under 11 U.S.C. § 524(a). *Pertuso*, 233 F.3d at 422-23; *see also Chastain v. Bank of Am. Home Loans*, 2012 Bankr. LEXIS 2878 (Bankr. E.D. Tenn. June 25, 2012) ("[T]his court has already found that there is no private right of action pursuant to 11 U.S.C. § 524(a)[.]").  While 11 U.S.C. § 524(i) was added after the decision in *Pertuso*, Plaintiffs have cited to no caselaw or other authority that persuades the Court that the addition of that provision created a private right of action.  Section 524(i) states:

> (i) The willful failure of a creditor to credit payments received under a plan confirmed under this title, unless the order confirming the plan is revoked, the plan is in default, or the creditor has not received payments required to be made under the plan in the manner required by the plan (including crediting the amounts required under the plan), <u>shall constitute a violation of an injunction under subsection (a)(2)</u> if the act of the creditor to collect and failure to credit payments in the manner required by the plan caused material injury to the debtor.

11 U.S.C. § 524(i) (emphasis added).  In other words, a failure of a creditor to credit plan payments to the debtors' material injury constitutes a violation of the discharge injunction as set forth in 11 U.S.C. § 524(a)(2).  A debtor's post-petition remedy for violation of the discharge injunction is civil contempt, and such civil contempt motions are properly brought in the court from which the discharge injunction originated.  *In re Martin*, No. 11-8052, 2012 Bankr. LEXIS 906 (B.A.P. 6th Cir. Mar. 7, 2012) (citing *Cox v. Zale Del., Inc.*, 239 F.3d 910, 915 (7th Cir.

2001)); *In re Franks*, 363 B.R. 839 (Bankr. N.D. Ohio 2006); *In re Perviz*, 302 B.R. 357, 370 (Bankr. N.D. Ohio 2003).  Nothing in section 524(i) indicates a private right of action is properly pursued for violation of the discharge injunction.  Accordingly, Defendants' motion to dismiss Count Seven is granted.  *Pertuso*, 233 F.3d at 419 (affirming district court's dismissal of plaintiff's claims, including the claim for violation of 11 U.S.C. § 524).

### III.    CONCLUSION

Consistent with the foregoing, the Motion to Dismiss of Bank of New York and Caliber Home Loans, Inc. (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART**.  The following claims are hereby **DISMISSED**:  (1) Count Three, only to the extent it seeks statutory damages; (2) Count Five, and (3) Count Seven.

**IT IS SO ORDERED**.

s/Michael R. Barrett
JUDGE MICHAEL R. BARRETT
UNITED STATES DISTRICT COURT